IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JUANITA K.,[1]                                            Case No. 6:22-cv-00461-HL

            Plaintiff,                          **OPINION AND ORDER**

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

            Defendant.

_____

HALLMAN, United States Magistrate Judge:

        Plaintiff Juanita K. brings this action under the Social Security Act (the "Act"), 42 U.S.C.

§ 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security

("Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance

Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the

decision of the Commissioner is REVERSED and REMANDED for further proceedings.

_____

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name
for non-governmental parties and their immediate family members.

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

I.    **Plaintiff's Application**

Plaintiff alleges disability based on anxiety, acid reflux disease, gastroesophageal reflux disease ("GERD"), degenerative disc disease, arthritis in the lower back, and pre-diabetes. Tr.

72-73.[2]  At the time of her alleged onset date, she was 54 years old. Tr. 72. She has completed

high school, and she has never held a driver's license. Tr. 242, 39. She has past relevant work as

a fitting room attendant. Tr. 25.

Plaintiff protectively applied for DIB on December 12, 2018, alleging an onset date of

September 3, 2018. Tr. 72-73. Her application was denied initially on February 6, 2019, and on

reconsideration on June 24, 2019. Tr. 81-82, 95. Plaintiff subsequently requested a hearing,

which was held on February 1, 2021, before Administrative Law Judge ("ALJ") Mark Triplett.

Tr. 14-15. Plaintiff appeared and testified at the hearing, represented by counsel Tr. 15. A

vocational expert ("VE"), Franklin Corbin, also testified. Tr. 15. On March 31, 2021, the ALJ

issued a decision denying plaintiff's claim. Tr. 26. Plaintiff requested Appeals Council review,

which was denied on January 28, 2022. Tr. 1-3. Plaintiff then sought review before this Court.[3]

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v.
Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must

demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected . . . to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person

is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  At

step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 14).

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 10).

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not

disabled. 20 C.F.R. §§ 404.1566, 416.966.

### III.    The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful

activity after her alleged onset date through the date of the ALJ's decision. Tr. 18.

At step two, the ALJ determined that plaintiff has the following severe impairments:

"degenerative disc disease and obesity." Tr. 18.

At step three, the ALJ determined that plaintiff's impairments did not meet or medically

equal the severity of a listed impairment. Tr. 20. The ALJ then resolved that plaintiff had the

residual function capacity ("RFC") to perform less than the full range of light work, with the

following limitations:

> She can occasionally climb ramps and stairs. She can never climb ladders,
> ropes, or scaffolds. She can frequently balance, but only occasionally stoop, kneel,
> crouch, and crawl. She requires the use of a single point cane held in the right,
> dominant upper extremity when ambulating greater than fifty feet. She can tolerate
> occasional exposure to workplace hazards, such as unprotected heights and
> exposed, moving machinery.

Tr. 21.

At step four, the ALJ found that plaintiff could perform her past relevant work as a fitting

room attendant. Tr. 25. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 26.

### DISCUSSION

Plaintiff argues that the ALJ committed five errors: (1) improperly finding plaintiff's

mental impairments non-severe; (2) failing to properly evaluate medical opinion evidence

regarding plaintiff's physical impairments; (3) failing to provide clear and convincing reasons to

reject plaintiff's symptom testimony; (3) failing to provide clear and convincing reasons to reject

the lay witness' testimony; and (4) failing to support the step four finding with substantial

evidence. For the reasons discussed below, the Commissioner's decision denying plaintiff's claim is reversed and remanded for further proceedings.

## I.      Step Two Finding

Plaintiff first asserts that the ALJ erred at step two by improperly finding plaintiff's mental impairments were non-severe.

At step two, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is both medically determinable and severe. 20 C.F.R. § 404.1520(c). An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence. 20 C.F.R. § 404.1520(c). An impairment is severe if it significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(c). The step two threshold is low; the Ninth Circuit describes it as a "*de minimus* screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). As such, any "error  at step two [is] harmless [if] step two was decided in [the claimant's] favor with regard to other ailments." *Mondragon v. Astrue*, 364 Fed. Appx. 346, 348 (9th Cir. 2010) (citing *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)).

Here, the ALJ found that plaintiff had a number of medically determinable and severe physical impairments at step two. Tr. 18. Concerning plaintiff's anxiety, panic disorder, and post-traumatic stress disorder ("PTSD"), the ALJ determined they were medically determinable but not severe because her mental impairments "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities…" *Id.* The ALJ's reasoning for finding plaintiff's mental impairments non-severe is inadequate for many reasons. First, the ALJ relied on one instance where plaintiff denied suicidal ideation, when the record as a whole shows that there are multiple other occasions where Plaintiff expressed suicidal ideation, and her providers

noted that she had ideas on how to carry this suicidal ideation out. Tr. 394, 520-22, 532, 637-43.
An ALJ may not rely on isolated example of temporary well-being to reject testimony as
inconsistent with the medical record as a whole. *Garrison*, 759 F.3d at 1017-18. Second, the ALJ
reasoned that her mental health impairments were not severe because plaintiff "was not
interested in pursuing counseling." Tr. 19. However, plaintiff did pursue counseling and
medication management for her mental health impairments through her primary care provider.
Tr. 520-607. Plaintiff further explained that she did not pursue specialized mental health
treatment because the agency to which she was referred to kept switching her counselors, and she
found it very difficult and counterproductive to start over in telling her traumas to different
counselors so often. Tr. 54-55. Accordingly, the ALJ's determination that Plaintiff's mental
health conditions was not severe was not supported by substantial evidence.

Nevertheless, given that the ALJ continued the sequential evaluation process and
formulated an RFC that considered evidence and allegations pertaining to plaintiff's mental
impairments, Tr. 22-25, any alleged error at step two is harmless. *See Buck v. Berryhill*, 869 F.3d
1040, 1048-49 (9th Cir. 2017) (explaining that step two is not meant to identify the impairments
that should be considered when determining the RFC, because the adjudicator must consider
limitations and restriction imposed by all of an individual's impairments, even those that are not
severe).[4]

## II.    Medical Opinions

Plaintiff next asserts the ALJ improperly rejected critical aspects of Dr. Arnsdorf's
opinion, without providing legally adequate reasons for doing so. Pl.'s Opening Br. 15.

---

[4] Although any error by the ALJ with respect to the step two analysis was harmless, as discussed
in greater detail below, the ALJ failed to properly evaluate the medical opinion evidence in the
step four analysis

Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§404.1520c(a)-(b); 416.920c(a)-(b).[5]

Under the revised regulations, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.* An ALJ is "not required to explain how they considered other secondary medical factors, unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical." *Id.* (*citing* 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3)). An ALJ's decision to discredit a medical opinion must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

Dr. Arnsdorf, plaintiff's treating physiatrist, completed a statement and identified the following functional limitations: plaintiff could stand or walk for less than two hours in an eight hour workday; she could sit for up to four hours; she could occasionally lift less than ten pounds; she could rarely twist or climb stairs; she could never stoop, crouch, or climb ladders; she would need to take breaks to change positions at will and should elevate her legs to waist level for ten percent of the workday due to edema. Tr. 662-63. Dr. Arnsdorf further opined that plaintiff would be absent from work two days per month. Tr. 663.

---

[5] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods*, 32 F.4th at 792. The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

The ALJ found Dr. Arnsdorf's opinion to be unpersuasive because the overall evidence in the record was inconsistent with the opined limitations. Tr. 24-25. An inconsistency within a doctor's opinion can constitute a specific and legitimate reason to reject it. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (explaining that internal contradiction is a specific and legitimate reason for rejecting a treating physician's opinion). Further, the more consistent the opinion is with the evidence as a whole, the greater weight the opinion should be accorded. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

The ALJ stated that Dr. Arnsdorf's opinions are contradictory of each other given that he did not indicate why he opined plaintiff was able to perform sedentary work at one time, but then less than sedentary work at a later time. Tr. 24. The ALJ also found Dr. Arnsdorf's opinion to be contradictory because "the note regarding the imaging not explaining the symptoms was not reconciled in these opinions." *Id.* The ALJ also explained that while mild edema was noted on exam, this alone does not support the leg elevation limitation opined by Dr. Arnsdorf. *Id.* The ALJ also found Dr. Arnsdorf's opinion to be inconsistent with isolated instances of "improvement." These instances include one occurrence where plaintiff reported improvement with injection therapy, one instance where plaintiff was able to walk for thirty minutes at a time, sit comfortably in a chair, and where she was slow and antalgic, but she had improvement in mobility and rhythm. *Id.* The ALJ also pointed to instances where plaintiff had a normal gait, balance, and musculoskeletal strength on exam. *Id.* Lastly, the ALJ stated that plaintiff's laboratory testing was unremarkable for neuropathy, and that the testing did not reveal any explanation for the reported sensations in her feet. *Id.*

In this case, the ALJ's conclusion that Dr. Arnsdorf's opinions were inconsistent with the record was not supported by substantial evidence. The record reveals Dr. Arnsdorf's opined

limitations are supported by and consistent with the record as a whole. It is not contradictory that Dr. Arnsdorf opined that plaintiff could perform sedentary work in 2018, and then only sub-sedentary work two years later. Plaintiff's evolving condition and Dr. Arnsdorf's familiarity with plaintiff's limitations explains the difference in opinions. The ALJ's discussion about the imaging not explaining all of plaintiff's symptoms is also not an inconsistency. The ALJ did not address that Dr. Arnsdorf opined that it was possible that plaintiff's pain was related to pathology in her sacroiliac joints or hips, and that further testing was required. Tr. 449. The note regarding the imaging not explaining the symptoms was reconciled, as further imaging did show pathology in plaintiff's sacroiliac joints and her hips as Dr. Arnsdorf predicted. Tr. 458, 476.  Furthermore, the ALJ did not address the fact that plaintiff only experienced pain relief for about two to three weeks after her steroid injections. Tr. 56. Additionally, plaintiff's presentation of a normal gait during isolated exams is not on its face inconsistent with Dr. Arnsdorf's opinion that plaintiff has serious limitation in mobility and exertion.

Because the ALJ did not specifically account for the legitimate factors of supportability and consistency when discrediting Dr. Arnsdorf's opinion, the ALJ's conclusions are not supported by substantial evidence.

## III. Subjective Symptom Testimony

Plaintiff next asserts that the ALJ failed to provide clear and convincing reasons to reject her symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)*.* In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208*.* To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

A.    Testimony

With respect to her physical conditions, plaintiff testified that she had stopped working in 2018 because she often was unable to move and had radiating back pain that confined her to no more than twenty minutes of standing at one time. Tr. 44-46, 48-49. Plaintiff testified that she has difficulty standing for long periods and sitting due to pressure in places on her hips. Tr. 48. She reported needing to take breaks when performing cleaning or cooking tasks at home. Tr. 49-

50. Plaintiff reported using a cane for ambulation and indicated that she needs to lie down at times to relieve her symptoms. Tr. 50-52. Plaintiff further explained that her pain began in 1993 when she gave birth to her son, and that it had gotten worse over the years and began affecting her ability to work in 2018. Tr. 367, 448.

After summarizing plaintiff's hearing testimony, the ALJ determined that her medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 22. In discounting the testimony, the ALJ relied on the following rationales: the testimony conflicts with the medical evidence; plaintiff experienced improvement with treatment; and that plaintiff's work history and activity conflict with the alleged severity of her symptoms. Tr. 22-23. Plaintiff argues these are not clear and convincing reasons, supported by substantial evidence, for discounting her testimony. Tr. 15-17. The Court addresses each rationale in turn.

   B.   *Contradictory Medical Evidence*

As to the first reason, an ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect

your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Here, the ALJ concluded that plaintiff's testimony on her physical symptoms was contradicted by physical examinations where plaintiff had normal musculoskeletal strength and normal gait and balance. Tr. 23. The ALJ cited to two exams where plaintiff's straight leg testing was negative. *Id.* The ALJ further found that plaintiff's laboratory testing was unremarkable for any neuropathy, and testing did not reveal an explanation for plaintiff's reported sensations in her feet. *Id.* The ALJ also reasoned that because there is no evidence of surgical intervention in the record, plaintiff's symptom testimony is contradicted. *Id.* The ALJ also discussed how plaintiff underwent injection therapy and acupuncture and reported improvement. Tr. 22-23.

The parties disagree as to whether the ALJ cited particular objective medical evidence as a reason for rejecting plaintiff's subjective symptom testimony. Plaintiff contends that the ALJ cited certain objective medical evidence, as contradicting her alleged limitations, but identified no particular findings inconsistent with any of the specific functional deficits plaintiff described. Pl.'s Opening Br. 15-16.

The medical record demonstrates that plaintiff's subjective complaints were consistent with treatment records. While imaging results of plaintiff's lumbar spine did not explain all of her symptoms, Dr. Arnsdorf opined that the unexplained symptoms may be due to pathology in plaintiff's hips or sacroiliac joints. Tr. 449. Additionally, an ALJ may not rely on isolated examples of temporary well-being or relief from disabling symptoms to reject testimony as inconsistent with the medical record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014). Therefore, the ALJ identifying two instances where plaintiff's straight leg testing was negative, is not substantial evidence to support the ALJ's finding that plaintiff's subjective

symptom testimony is contradicted by her medical records. The record as a whole is consistent

with plaintiff's subjective symptom testimony, and the ALJ failed to explain how the medical

evidence directly contradicts plaintiff's testimony. "The ALJ must state specifically which

symptom testimony is not credible and what facts in the record leads to that conclusion."

*Smolen*, 80 F.3d at 1273 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). Here,

plaintiff's symptoms are not contradicted by her medical records, and the ALJ did not rely on

substantial evidence to support his conclusion.

The ALJ made a similar error when addressing plaintiff's reported improvement from

injection therapy and acupuncture. Tr. 22. In November 2018, plaintiff explained to Dr. Arnsdorf

that the injection only relieved her pain by about fifty percent, and only lasted for a week. Tr.

452. Plaintiff also pursued other nonsteroidal injection treatment options including Toradol,

which only helped relieve her symptoms for a week. Tr. 470. In November 2019, plaintiff

reported that her previous injection helped with pain on her right side for about a month. Tr. 653.

However, at that same visit, plaintiff informed Dr. Arnsdorf that she was feeling overall worse,

and she complained of pain from the knees down. *Id.* In November 2020, plaintiff reported to Dr.

Arnsdorf for a follow-up appointment after receiving a prolotherapy injection. Tr. 672. Dr.

Arnsdorf documented that plaintiff's pain was a 3/10, with only occasional "twinges" of pain. *Id.*

However, at this same appointment, plaintiff reported that while her symptoms have greatly

improved from before, she still is only able to walk for thirty minutes before experiencing

significant pain. *Id.* When citing to these instances of temporary relief, the ALJ failed to take into

account that plaintiff experienced only temporary pain relief, and the injections did not restore

her functional abilities. Tr. 56. Plaintiff's symptoms are not contradicted by these brief periods of

temporary pain relief, and therefore the ALJ did not rely on substantial evidence to support his conclusion.

In sum, the record lacks substantial evidence to support the ALJ's finding that plaintiff's subjective symptom testimony is contradicted by her medical records.

C.    *Work History*

The ALJ also rejected plaintiff's subjective symptom testimony due to her work history. The ALJ explained that plaintiff's painful symptoms began in 1993, however, she continued to "work at a level of substantial gainful activity for years after that date." Tr. 23. The Commissioner asserts that the ALJ properly rejected plaintiff's testimony because she was able to work for a number of years despite her painful symptoms. Def.'s Resp. Br. 8. "[A]n ALJ may reject allegations of disabling limitations when a claimant's impairment is of longstanding duration and did not prevent him from working in the past, and there is no evidence of significant worsening of symptoms during the relevant period." *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988). The fact that plaintiff was able to work for a time despite her impairments fails to account for her testimony that that her symptoms worsened over time, ultimately becoming debilitating, which is evidence the ALJ was required to consider. As such, plaintiff's past work history was not a clear and convincing reason to discount plaintiff's subjective symptom testimony.

D.    *Activities*

Finally, the ALJ discounted plaintiff's subjective symptom testimony as a whole due to plaintiff reporting that she was able to sit comfortably in a chair, walk for thirty minutes, and that she was planning on possibly moving to Washington. Tr. 23-24. (citing Tr. 585). Plaintiff argues that because she was merely thinking about going on a trip there is no evidence that she could

have actually accomplished going on the trip given her limitations, and therefore the ALJ

improperly relied on the mere thought of potentially going on a trip. Pl.'s Opening Br. 5. The

Ninth Circuit has consistently instructed, however, that such a modest level of activity is not

sufficient to reject subjective complaints. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.

2001). This Court has repeatedly asserted that the mere fact that a plaintiff has carried on certain

daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not

in any way detract from her credibility as to her overall disability. As such, plaintiff's ability to

sit in a chair, walk for thirty minutes, and plan a potential trip to Washington are not clear and

convincing reasons to discount plaintiff's subjective symptom testimony.

## IV.      Lay Witness Testimony

Plaintiff next argues that the ALJ failed to consider lay witness testimony regarding her

symptoms, contending that the ALJ must provide specific and legitimate reasons in doing so.

Lay testimony concerning a claimant's symptoms on how an impairment affects the

ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674

F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide

"reasons germane to each witness" to reject such testimony. *Id*. (citation and internal quotation

omitted). However, failure to discuss or weigh third-party testimony is harmless where the ALJ

validly discounts similar evidence. *See id*. at 1118-19 (ALJ's failure to comment upon lay

witness testimony is harmless where "the testimony is similar to other testimony that the ALJ

validly discounted, or where the testimony is contradicted by more reliable medical evidence that

the ALJ credited").

Plaintiff's brother, Ricky K., completed a questionnaire describing plaintiff's limitations.

Tr. 274-281. The lay witness stated that plaintiff, sometimes cannot make it to the restroom in

time, has difficulty getting into and out of the car, cannot stand for long periods of time, and that she walks with a cane. Tr. 275-77. At step three, the ALJ simply stated that the plaintiff's brother "noted that the claimant experienced pain in her lumbar or hip area and reiterated similar limitations." Tr. 22. The ALJ gave no reasoning for discounting the limitations the witness described. *Id.*

The Commissioner asserts that because the ALJ gave valid reasons for rejecting plaintiff's subjective symptom testimony, it necessarily follows that he gave germane reasons to discount the similar lay testimony. Def.'s Resp. Br. 9.

The relevant regulation provides: "[w]e are not required to articulate how we considered evidence from nonmedical ***sources using the requirements in paragraphs (a)-(c) in this section***." 20 C.F.R. § 404.1520c(d) (emphasis added). Defendant's argument would render the highlighted part of the sentence superfluous. *See Jerri F. v. Kijakazi*, 1:20-4037-RMG-SVH, 2021 WL 3362227, *14 (D.S.C. July 29, 2021) ("If ALJs were no longer required to provide any articulation as to how they considered lay witness statements, the additional language would be superfluous"), *report and recommendation adopted*, CV 1:20-4037-RMG, 2021 WL 3396230 (D.S.C. Aug. 3, 2021). Thus, although the regulations no longer require the application of the requirements (a)-(c), they "do not eliminate the need for the ALJ to articulate analysis of lay-witness statements." *Jason R. v. Comm'r, Soc. Sec. Admin.*, 6:20-CV-01981-MK, 2022 WL 981329, *9 (D. Or. Jan. 21, 2022), *report and recommendation adopted*, 6:20-CV-01981-MK, 2022 WL 980880 (D. Or. Mar. 31, 2022).

As discussed previously, the ALJ in this case did not give legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. The ALJ therefore erred in failing to supply a germane reason to reject the lay witness' statements as well.

V.    **Step Four Finding**

Plaintiff's final assignment of error is that the ALJ did not include all of plaintiff's impairments when posing hypothetical questions to the vocational expert.

An ALJ's depiction of a claimant's impairments must be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). In order to have sufficient evidentiary value, the dispositive hypothetical question posed to the VE must include all of the limitations which are supported by substantial evidence in the record, and which the ALJ has explicitly "accepted," usually as set forth in the RFC.  *Cooper v. Sullivan*, 880 F.2d 1152,1158 n.13 (9th Cir. 1989); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ; see also *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). An ALJ's hypothetical questions to the VE need not include limitations which the ALJ has found to be non-credible or accorded diminished evidentiary weight (as to claimant testimony or medical opinion evidence), so long as the ALJ makes specific findings explaining why the limitations were not probative, and therefore omitted. *Stubbs-Danielson*, 539 F.3d at 1174 (citing *Batson Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-96 (9th Cir. 2004).

In this case, the ALJ improperly omitted the physical impairments described by the lay witness and assessed by Dr. Arnsdorf. The ALJ simply posed hypothetical questions regarding whether the plaintiff could perform light or sedentary work. Tr. 61-63. The only individualized limitation included in an adjusted hypothetical was plaintiff's use of a single point cane used when ambulating greater than fifty feet. Tr. 62.

In regard to plaintiff's mental impairments, the ALJ did not adequately address plaintiff's medically determinable mental impairments when determining her RFC. The ALJ stated that the

mental impairments identified in the paragraph B criteria are not an RFC assessment, but are used to rate the severity of impairments at steps two and three, and that the mental RFC assessment at steps four and five require a more detailed assessment. Tr. 20.  However, the ALJ did not conduct a more detailed assessment of plaintiff's mental impairments when determining her RFC. Tr. 21-25. When determining plaintiff's RFC, the only instance where the ALJ discussed plaintiff's mental impairments was when he addressed the medical opinions in the record. Tr. 24. The state agency consultants opined that plaintiff's mental impairments are not severe, and the ALJ found their opinions to be persuasive, and consistent with the overall evidence in the record. *Id.* However, when assessing the RFC, the ALJ must consider limitations imposed by all of plaintiff's impairments, not just those that are deemed severe. SSR 96-8p, 1996 WL 37184, at *5 (July 2, 1996). Therefore, plaintiff's mental limitations should have been considered when assessing her RFC.

Because the VE's testimony that plaintiff could perform her past relevant work was based on the ALJ's failure to accurately pose all of plaintiff's impairments, the VE's testimony has no evidentiary value, and is therefore not based on substantial evidence.

## VI.    Remedy

Plaintiff asserts that this case should be remanded for immediate payment of benefits under the credit-as-true standard. Applying the requisite standard, for the reasons set forth below, the Court finds that the record is not free of conflict and ambiguity and therefore must be remanded for further proceedings.

### A.    *Legal Standard*

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits."  *Holohan v. Massanari*, 246 F.3d

1195, 1210 (9th Cir. 2001). Although a court should generally remand to the agency for

additional investigation or explanation, a court has discretion to remand for immediate payment

of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014).

The issue turns on the utility of further proceedings. A court may not award benefits punitively

and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by

the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r*

*of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Generally, where "(1) the record has been fully developed and further administrative

proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient

reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the

improperly discredited evidence were credited as true, the ALJ would be required to find the

claimant disabled on remand," the district court should remand for payment of benefits.

*Garrison*, 759 F.3d at 1020.

In conducting this analysis, the district court first determines whether the ALJ made a

legal error and then reviews the record as a whole to determine whether the record is fully

developed, the record is free from conflicts and ambiguities, and whether there is any useful

purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015).

Only if the record has been fully developed and there are no outstanding issues left to be

resolved does the court consider whether the ALJ would be required to find the claimant disabled

on remand if the improperly discredited evidence were credited as true. *Id.* If so, the court can

exercise its discretion to remand for an award of benefits. *Id.*

Even where all the requisites are met, however, a court may still remand for further

proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in

fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (internal quotations and citation omitted).

     B.    *Analysis*

On the first prong, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler,* 775 F.3d at 1101 (internal quotations and citations omitted).

As discussed above, the ALJ committed harmful legal error by failing to properly evaluate evidence from plaintiff and Dr. Arnsdorf. Further proceedings would nonetheless be useful regarding the extent of plaintiff's allegedly disabling impairments, such that crediting the wrongfully rejected evidence as true and/or remanding for the immediate payment of benefits is improper.

On one hand, it is undisputed that plaintiff's physical health impairments are longstanding, and have persisted at significant levels since the alleged onset date. On the other hand, plaintiff worked for many years with these impairments, and she alleged pain beginning well before the relevant period. Tr. 242, 448. Therefore, it is unclear exactly how debilitating her physical impairments are. Dr. Arnsdorf also stated that plaintiff's MRI does not look bad enough to explain all of her symptoms, particularly the weaknesses in her lower limbs. Tr. 450, 516.

The record is likewise underdeveloped as to plaintiff's mental limitations. On one hand, the record establishes ongoing treatment for anxiety, depression, and PTSD, despite a lack of

specialized and consistent treatment. Tr. 362-66, 369-382, 393-416, 450, 456, 530-33. However, the state agency psychologists opined that plaintiff did not have any severe mental impairments, and no other medical source gave a contrary opinion. Tr. 24, 76, 90. There are points in the record where plaintiff reported difficulty with stress and social interactions. Tr. 75, 378, 394. However, plaintiff also reported that she generally handled stress "okay," handled changes in routine "very well," followed instructions "very well," and that she had never been fired or laid off from a job due to difficulties getting along with other people. Tr. 254. The VE testified that someone who would be absent two or more days each month or off task more than fifteen percent of the workday could not sustain competitive employment. Tr. 63, 65. But it is unclear based on the existing record whether plaintiff is such an individual. In other words, the record is underdeveloped as to how much plaintiff would be off task and how many hours a week she would likely miss due to her mental conditions.

In light of the lack of a fully developed and unambiguous record, the Court will not credit the discounted testimony as true, and the appropriate remedy is to remand to the Commissioner for further proceedings. On remand, the ALJ must (1) accept Dr. Arnsdorf's opinion or provide legally sufficient reasons for rejecting it, (2) accept plaintiff's testimony or provide legally sufficient reasons for rejecting it, (3) accept the lay witness statements or provide legally sufficient reasons for rejecting them, (4) review any new evidence, and (5) as necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court

REVERSES and REMANDS for further proceedings.

IT IS SO ORDERED.

DATED this 13th day of April, 2023.

_____
ANDREW HALLMAN
United States Magistrate Judge